## MATTER OF BHEGANI

### In Visa Petition Proceedings

### A–20941352

### Decided by Board May 16, 1975

The lawful permanent resident petitioner applied for preference classification for the beneficiary as his adopted son under section 203(a)(2) of the Immigration and Nationality Act. The petition was denied, and the appeal dismissed because the requisite relationship was not established between petitioner and beneficiary. Petitioner had been the customary guardian of the beneficiary since 1962 when the child was 10 years old. However, since the legal institution of adoption does not exist under Islamic law, the beneficiary could not have been adopted as required under section 101(b)(1)(E) of the Act, and the petition was properly denied.

ON BEHALF OF PETITIONER: Pro se

The lawful permanent resident petitioner applied for preference classification for the beneficiary as his adopted son under section 203(a)(2) of the Immigration and Nationality Act. In a decision dated March 6, 1975, the district director denied that petition. The petitioner has appealed from that denial. The appeal will be dismissed.

In visa petition proceedings, the burden of establishing the claimed relationship is upon the petitioner. *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966). In order for the petitioner to establish that the beneficiary is his adopted son, he must show that the beneficiary was adopted in accordance with the requirements of section 101(b)(1)(E) of the Act, which includes:

a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years . . . .

The beneficiary was born in Uganda in 1952. The petitioner claims that he became the "customary guardian" of the beneficiary under Islamic law in Uganda after the death of the beneficiary's mother in 1962.

The district director received a report from the Near Eastern and African Law Division of the Library of Congress regarding the possibility of adoption by Muslims under the law of Uganda. That report indicates that the only form of legal adoption available to Muslims in

Uganda is that provided by the Adoption of Children Act of 1943 of Uganda.[1] Moreover, the report also notes that the legal institution of adoption does not exist under Islamic religious law. See also *Matter of Ashree, Ahmed and Ahmed*, 14 I. & N. Dec. 305, (BIA 1973); *Matter of Boghdadi*, 12 I. &. N. Dec. 666 (BIA 1968).

The petitioner concedes that the beneficiary was not adopted in accordance with the Adoption of Children Act of Uganda. The petitioner points out that he has raised and supported the beneficiary since childhood, that he has treated the beneficiary as a member of the family, and that having been forced to flee from Uganda the beneficiary has nowhere else to resettle but in this country. Unfortunately, these sympathetic considerations do not permit us to approve the petition where no legal adoption has been established. We must dismiss the appeal.

**ORDER:** The appeal is dismissed.

---

[1] The Adoption of Children Act states, in part:

*Sec. 3 (1).* Upon an application in the prescribed manner by any person desirous of being authorized to adopt an infant who has never been married, the court may, subject to the provisions of this Act, make an order (in this Act referred to as "an adoption order") authorizing the applicant to adopt the infant.

*Sec. 4 (5).* An adoption order shall not be made in favour of any applicant unless he is a British subject or a citizen of Uganda and is a resident in Uganda or in respect of any infant unless he is a British subject or a citizen of Uganda and is resident in East Africa.